Your Honors, this case concerns the Force Clause of the Crime of Violence Definition in the Illegal Reentry Guideline. To satisfy that clause, a State offense must have as be applied at least recklessly, not negligently, and not accidentally. The question here is whether the Florida offense of resisting, obstructing, or opposing an officer by doing or offering violence to that officer satisfies these requirements. It does not for two reasons. First, because violence and physical force are distinct concepts under Florida law, and non-forceful conduct as wiggling and struggling while being detained. And second, the claimed forceful conduct here, doing or offering violence, requires no mental state at all. A person can be, and has been, convicted of resisting with violence for driving away from a police officer, but accidentally allowing the side view mirror to hit the officer's hand. And if the court agrees with either of these two points, then the crime of violence enhancement in this case should be reversed. And Your Honors, our first argument that the enhancement was inappropriate here is really quite simple. Florida treats violence and the use of physical force as separate and distinct concepts. In fact, the phrase violence and the phrase use or threat of physical force appear as alternatives in the same sentence in at least five different statutes in Florida. These statutes range from substantive offenses like robbery and carjacking to recidivist sentence enhancements like the crime of violence enhancement that we have in front of us here today. So if the court was to interpret violence in the resisting with violence statute to entail the use of physical force, it would effectively make the phrase the use or threat of physical force meaningless in all of these statutes. And the court should certainly hesitate to read this statute in a way that would render the terms of those other Florida laws superfluous. And another reason why we think this court could be confident that violence and using force are distinct concepts in Florida law is that there's another Florida statute on the books that deals with the exact same subject matter. And it specifically refers to resisting an officer with physical force. That statute states that a person is not justified in the use or threatened use of force in resisting an officer who's trying to make an arrest in good faith. And what that tells us is that a Florida legislator knew how to draw a statute as to refer to resisting an officer with force, but chose not to do so in drafting the resisting with violence statute. But your honors, the best evidence that we have in this case that violence in this Florida statute is broader than the term use of force is that the Florida cases that have construed that term and applied it to conduct that is plainly non-forceful. And we cited in our brief, Green, a 1981 case out of the Florida District Court of Appeals that rejected a defendant's argument that as a matter of law, his conduct of wiggling and struggling while being handcuffed did not satisfy the doing or offering violence element of this crime. That means that that was legally sufficient to go to a jury to support a conviction. Another case in 1996 is Wright v. State. In that case, the court upheld the defendant's resisting with violence conviction against a legal sufficiency challenge, holding that his acts of struggling, kicking and flailing his legs after being tackled and sat on by the officers qualified as or offering violence element. And the common thread with this conduct, your honors, and the bottom line here is that wiggling and struggling and flailing someone's arms while being sat on by officers is not as a type, is a different type. Well, if the kick or the flail had connected, it would have been force, right? Yes, your honor. And that's the crucial distinction here is that in that case, the officers, Mr. Wright ran away from the officers, the officers tackled him and sat on him. And so while he's being sat on and indeed he was eventually hogtied, his arms are flailing and his legs are kicking. That is not directed. That's not the type of violent force directed at an officer's person that should satisfy the force clause. But even if flailing and kicking, of course, and by the way, flailing and kicking at an officer intentionally or in the direction of his officer would absolutely qualify as a use of force. But struggling and wiggling certainly is not the type of violent and aggressive conduct that typically satisfies the force clause of the crime of violence definition. And as long as that type of conduct can satisfy a conviction in this state, then the crime of violence enhancement should not apply. But even if we look past the statute's application to obviously non-forceful conduct, there's a second equally powerful reason why it falls outside the force clause. And that's because resisting an officer with violence requires no mental state with respect to the doing or offering violence element. Now this court's recent cases have clarified that at least in this circuit, the force clause now encompasses reckless applications of force. But those cases expressly adhere to Leocal's admonition that force cannot be applied negligently or accidentally. And that's important in this case because the Florida Supreme Court has twice made clear that the willfully and knowingly mens rea in this statute only applies to the force and the object officer. But it doesn't apply throughout the statute. And that's the crucial thing that the 11th Circuit missed in its opinion in 2012 in United States versus Romo v. Lobos. The 11th Circuit looked at the term violence and equated it to using physical force without and specifically looked at the Florida Supreme Court's decision saying that this was a general intent crime and read that to mean that there's an intent required throughout the statute. But the Florida Supreme Court was clear. The gravamen of this offense is resisting, obstructing, or opposing an officer willfully, full stop. In fact, in Polite, the 2007 case in the Florida Supreme Court, that court was very clear in doing a very extensive statutory interpretation analysis. And at no point in that opinion did the court tether the willfully or knowing mens rea to the doing or offering violence element. And I think that's important in this case. So what that tells us is it leaves open the possibility that resisting with violence would apply to a willful act of resistance against an officer that happens to result in violence negligently or accidentally or even intentionally or recklessly. The point is that there's no proof required for the offering or doing violence element. And that's what's important in the force clause. Now of course, in light of this court's recent en banc opinion in Castillo Rivera, it's especially important that we can point the court to a case here that demonstrates that the statute has been applied to this type of negligent or accidental conduct. And that case is Yerusso v. State, cited in our briefs in the 2006 case. There, Mr. Yerusso was at a well-lit car lot in the middle of the night. Plainclothes officers approached him, they identified themselves, and they accompanied him over to his car. Mr. Yerusso got into the car, locked the door, and began backing up. Officer Taggart, the officer that had come up next to him, yelled a stop, held out his hand, and Mr. Yerusso drove away. And while he was driving away, as the Florida Court of Appeals put it, he allowed his car, or the rear view mirror of his car, to hit the officer's hand. And that conduct right there went to a jury in Florida, and the Florida jury found Mr. Yerusso guilty of resisting an officer with violence. And while his conviction was ultimately overturned on appeal for different reasons, in Yerusso, the Court of Appeals made clear that it was undisputed that an act of violence occurred when his car hit the officer's hand. And in that case, it's typical of what we're saying here. Mr. Yerusso knew these individuals were officers, and he was willfully trying to resist their attempt to detain him. But there's nothing in that case that suggests that he was anything more than accidental or negligent with respect to the rear view mirror hitting the officer's outreached hand. And at the very bottom line, there's certainly nothing in the case that suggests that the prosecutor had to prove that he acted intentionally to hit the officer's hand, that he knew that he was going to hit the officer's hand, or that he acted in reckless disregard or conscious disregard of the risk that the mirror would hit the hand. And that's exactly, that is the crucial point in this case, and why the crime of violence, and that's the second reason why this crime of violence enhancement shouldn't apply. Your Honors, I'd also like, if there's no further questions on those first two points, I'd like to turn briefly to the remedy in this case. We think regardless of what standard review applies here, we do contend that our objection in district court was sufficient to preserve the de novo standard here. This court should have no reservations in concluding that reversal is appropriate if it deems the enhancement erroneous. The incorrect range here that Mr. Shalom Mendez was sentenced in is 57 to 71 months. Without the error, it's undisputed that the correct range is 24 to 30 months. That means that 33 months, there's a 33-month disparity, or almost three years, between the low-end sentence he received and the low-end of the correct guideline range. And what's very important in all, running through all the harmless error cases, and indeed in the third-pronged plain error analysis, now after Melina Martinez, is that there's no indication in this record that the district court decided to sentence, or select a 57-month sentence, for reasons independent of the calculated guideline range. The court did not consider the range that would have applied explicitly. It did not state at any point that it would impose the same sentence. And it chose the sentence at the bottom of the range, which is strong evidence that the guidelines influenced its decision. And also, if the court looks to the statement of reasons, that confirms that this was a sentence done within the framework of the guidelines. It wasn't a variance outside of the guidelines framework. And your Honor, just briefly with respect to the error preservation issue, I point the court specifically to the record at page 109. And that is our objection in the lower court, where the attorney asserted that the Florida courts, and I'm quoting here, have opined that the offense requires physical force or violence, strongly suggests that one can resist an officer with violence without using or offering to use physical force. And that is, in a nutshell, the claim we're making on appeal. It's unquestionably been refined. But that was sufficient to alert the district court to what our argument is on appeal. And that's why this error was preserved. And if your Honors have no further questions, I'll give the rest of my time back to the court. Thank you, counsel. May it please the court. My name is Carmen Mitchell, and I represent the United States in this case. The district court did not reversibly err in imposing a 16-level crime of violence enhancement based upon Shyland's prior Florida conviction for resisting an officer with violence. As this court is well aware, under Sentencing Guidelines, Section 2L1.2... Could you move the speaker a little closer? Yes, Your Honor. That's better. Thank you. As this court is well aware, under Section 2L1.2 of the Sentencing Guidelines, the district court is authorized to impose a 16-level crime of violence enhancement where the defendant has been previously convicted of a state law which has as an element the use, attempted use, or threatened use of physical force. The statute of conviction at issue here, Florida Statute Section 843.01, provides that a defendant is guilty of the offense of resisting an arrest with lawful violence if he knowingly resisted, obstructed, or opposed a law enforcement officer by offering or doing so in person. This court, in a previous unpublished opinion in United States v. Ramos-Bonilla, has already addressed the specific statute at issue here and held under a de novo standard of review that the statute at issue qualifies for crime of violence enhancement under Section 2L1.2, and the government encourages this court to follow suit in the present case. In Ramos-Bonilla, this court had analyzed its prior opinion in Alonzo-Garcia and held that the phrase, a threat to do violence, as used in Florida's statutory definition of assault, meant threat to use physical force, and therefore qualified as crime of violence. Moreover, the 11th Circuit in Romo-Fialobos has also analyzed the statute at issue here. In doing so, it reviewed the case under de novo standard of review, and it also reviewed the state of the Florida state cases interpreting the statute at issue here. In Romo-Fialobos in footnote 3, the 11th Circuit held that the statute is not a strict liability crime. That is, the defendant's argument there ran contrary to the state court frame. It also held that the Florida courts conclude that violence is a necessary element of this statute, and that circuit court, the 11th Circuit, the cert's been denied in that case. It held that Florida courts had held that doing violence in this context plainly involves the use of physical force or violence. It rejected the defendant's claim there that this Florida statute was satisfied by mere de minimis force. It also rejected the defendant's claim there that the offense could be conducted in a reckless way. But important to this court, the court there held that the Florida statute requires more than a mere accident, and that's Romo-Fialobos at page 1252. The government cited in its brief United States v. William as well, and that's also an 11th Circuit case, and that held Florida courts have determined a conviction under Section 843.01 requires proof of conduct or attempted conduct involving threatened or actual physical force with violence. A two-news that was also cited in the government's brief, the government would like to note here that that case was issued post-Voisin. With regard to recklessness, even if this court should conclude that recklessness is allowed under that statute, it should nevertheless affirm under Voisin. As this court is well aware, the U.S. Supreme Court held in Voisin, use means the act of employing something. It must be volitional conduct. It can't be involuntary or accidental conduct in order to adhere to l'il cal. This court in Howe recently reiterated that the Supreme Court's decision in Voisin substantially undercuts the statements in Fargus DeWan that the use of force encompasses only intentional conduct. Recklessness may qualify as an offense that has as an element of the use, attempted use or threatened use, of physical force against the person of another. And the word is indifferent with regard to a mental state of knowing intentional or recklessness. Counsel, can you hear me? Yes, Your Honor. The recklessness point, the case that you're putting on the other side for, the case that you proposed where there are clauses in the end was Yarouso, the hitting of Al Sarkhanian in New York. Does this kid on recklessness, did the court at all get into what that conduct was, other than there was sufficient none under the statute? It does seem to me that backing up with an officer standing there, either at a rapid speed or not, or whatever his reckless conduct is, is the same as somebody next to the car. How do you interpret Yarouso Yes, Your Honor. The government would argue that the act of backing into an officer as the officer is telling the defendant to stop still qualifies as recklessness rather than accidental or negligence. And so, as the 11th Circuit in Romo v. Alobos indicated, even looking at all of the prior state Florida cases, the statute at issue here cannot be alone. It must be violated by knowing your intentional conduct, and I would argue a step further, even recklessness. But I think that Romo v. Alobos answers that with regard to the state of the law in Florida as far as accident is concerned. Looking also at this court's most recent case, Mendez Henriquez, cited by the government's 28J letter, this court will look to the entire statute for the mens rea. It doesn't merely look at any mens rea indicating use of force. In other words, although Vargas Duran required intentional use of force, the state of the law, current state of the law, Post-Roisin and Howell, indicate that it doesn't have to be an intentional use of force and that the court will look to the entire statute. And again, backtracking to Romo v. Alobos, the 11th Circuit there held that statute, Florida Statute 84301, is not a strict liability statute. With regard to harmlessness, the District Court, if this court were to assume that error occurred and the government does not concede that, this court can look to the statements made by the District Court during the sentencing. The District Court was very clear that it was reviewing the 3553A factors and that it would not have imposed anything less than 41 months in the present case because of the defendant's criminal history. And that is, this defendant had previously been convicted for illegal reentry and was sentenced to 41 months, and the District Court here acknowledged that this did not deter this defendant from after that 41-month sentence. The court also was entitled to and did consider the fact that the prior Florida offense did involve violence. That was violence against a police officer, and the court could consider this under the 3553A factors, regardless of whether or not the Florida statute fit within the technical definition of 201.2. Finally, the statute did not deter future conduct and to protect the public. It further imposed a consecutive sentence on the revocation of supervised release rather than a concurring sentence, and the District Court expressly rejected the defendant's request for a 41-month sentence. As this court knows, recently in the case United States v. Shepherd is cited in the government's 28J letter, there are no specific magic words that must be stated by District Court when sentencing, and the government would argue in this case, if any error occurred, it was harmless. Should the court have no further questions, the government respectfully requests that the court affirm the judgment and sentence. Thank you. Thank you, counsel. Your Honors, I just have a couple brief points to make on rebuttal. It's true that in an unpublished case, this court in Ramos Bonilla has looked at this statute and decided that it was worthy of enhancement under this guideline. The problem is, as my friend in the government recognized, that case relied exclusively on Alonzo Garcia. Now, in Alonzo Garcia, this court looked at the Florida Aggravated Assault Statute, and the Aggravated Assault Statute speaks in terms of threatening to do violence to an individual. The court there looked specifically in holding that the Aggravated Assault Statute qualified as having a use of force to dictionary definitions of the term violence, and we don't quarrel with those dictionary definitions. The difference is that, as we've pointed out, the term violence has a specific meaning, or at least it's been applied much more broadly than those dictionary definitions in actual practice. And regardless, whether or not violence with respect to the Aggravated Assault Statute does always necessarily entail the use of physical force, and there's other factors at issue in that type of crime with the intentionally, knowingly threatening individual with imminent harm, the fact remains that in this statute, the resisting with violence statute, doing or offering violence has been found legally sufficient with wiggling and struggling while being handcuffed. And that's a very important distinction, and that's why Ramos Bonilla simply got it wrong on this. Ramos Villalobos, the 11th Circuit's opinion, also got it wrong. And to be clear, we don't dispute that violence is an element of this offense. An individual does have to do or offer violence to a police officer. The point is that the only mens rea in this offense is willfully resisting, impeding, or obstructing. And that's the crucial point. In Ramos Villalobos, that court did not address Yeruso, and it completely ignored the Florida Supreme Court's clarifying opinion in 2009. How did you willfully impede without some action? Your Honor, willfully impeding does require action, a voluntary act. And to willfully impede, I suppose, could be to run away from a police officer after getting off your bike and throwing the bike down behind you, and the cop's got to jump over the bike. I don't have a Florida case to point you for on that, but the point is that the volitional act here is the impeding, the resisting, or the obstructing an officer. But there's just no proof required for offering or doing violence. And that's what Yeruso demonstrates, is that the individual can drive away from a police encounter, a consensual encounter in that case, and as long as the vehicle hits the officer, that's enough. And Judge Southwick, to go to your point with the Yeruso case on the fact that that might have been reckless conduct, we simply don't know if Mr. Yeruso was acting recklessly because the state of Florida wasn't required to prove that as an element. It wasn't required to explain that, and that's what the difference is. So that's why you say that. Did you look at the jury instructions, or are you saying it was a matter of the statute they were not required to show it? As a matter of the statute, Your Honor, we don't have the jury instructions before us, and the Florida Court of Appeals didn't discuss them. But I have the Florida jury instructions. I have a citation. I can give that to the court in the 28J. And in just one simple sentence, it charges the jury with finding that the defendant either willfully or knowingly obstructed, opposed, or resisted an officer by doing violence. And that's all that they require. And so the Florida case law shows us that there's just no further proof required of doing or offering violence. And Mendez Enriquez is kind of a perfect foil here because the conduct in the California statute at issue in that case was willfully discharging a firearm at an occupied vehicle. And so the volitional act there, willfully shooting a gun, was tied to the use of force, and they were linked. That's the difference here, is that here, willfully resisting is all that's required. The claimed forceful conduct, doing violence, simply does not have a mens rea requirement. And briefly, with respect to harmlessness, that 41-month sentence was infected with the same 16-level crime of violence enhancement, and that mitigates the district court's consideration of it. And unlike Shepard, there were simply no words said here that indicate the district court would give the same sentence. For these Thank you, counsel. We had a hard time.